M.D.R. Motion to Re-open Framework at ACSR 1003.2 The second is the substantive issue of the Board of Immigration Appeals' denial of the motion to re-open format, meaning the changed circumstances and materiality standards. So I want to start first with the jurisdictional issue. And particularly with something that, so in our reply brief, I think it did a pretty good job of addressing the cases in this Court's holdings, and several cases that explain why the case relied particularly upon that a government, Sarmadi from 1997, does not control the outcome here. I think the reply brief could have done a bit of a better job explaining why those cases that we rely on, this Court's decision in Ramadan from 2007, Garmaini also from 2007, and Morales and Linus Galvan, why those cases aren't controlled by Sarmadi. And the reason for that is a really fundamental shift in the statutory scheme of 8 U.S.C. 1252 between 1997 when Sarmadi was decided, and after 2005 when the rest of those cases were decided. So, and this, yeah, and so the statutory part isn't spelled out in the reply brief, but it is spelled out if you go back and read Ramadan and Garmaini in particular. So, Sarmadi came out in 1997, a couple of years after the IDPA and IRA imposed very moderate restrictions, jurisprudential restricting provisions into the INA that took away, were reported to try to take away federal court review. I'm jumping to the last issue, but it just seems to me that the focus of this case turns on the fact that our prior panel denied relief on the ground that he might be subject to persecution, and now there's an unclaimed event, conditions have changed, but you were relying on evidence that was available at the time of the hearing. You waited five years to bring the motion to real. So, I think, so I'm not sure how that fits into the jurisdictional issue. I think that's related to substance. I mean, what really bothers me about this, what bothers me about the case is how can I say that the board abused its discretion when they essentially found that the conditions haven't changed in five years, and whatever the situation was at the time of the hearing hasn't really changed. Right. Not until today. Sure. Well, the court reviews and refers to the board on that exact issue quite regularly. You said that he's relying in his 2013 motion to reopen on evidence that was available at the time of his 2007 hearing. That's correct. You're on it. That's accurate. So, if you look, I think one of the most key pieces of new evidence that he relies on in his motion to reopen is this report from Norwegian Organization for Asylum Seekers. It's an AR-172. That report is from 2012, and it says that LGBT people in the European system are subjected to violence by both the government and private citizens, and that criminal cases are often fabricated against gay people who are then exposed to violence in prison. Expert letter from a Cornell professor. Is it your position that our case law that requires some sort of a more directed impact toward the petitioner is to be given little weight here because of these reports that you say indicate that the conditions are worsening? Right. So the board did cite as one of their reasons the fact that he wasn't able to particularize because the governor's case is certainly a focus. I understand. I understand. So, just to go back. So, with respect to new evidence, really quickly, also at AR-385, there's an expert letter from 2013, also new evidence. Another good report also from 2013 about violence against LGBT people is at AR-178. And all of those... Isn't there a state report? High streets? Yeah, also a state report from 2012. Your position? It was a dated 2012, both Norwegian and U.S. reports. The key evidence was 12-13-2007. Ransoms? Right, right. 2012 and 2013. Well, not from 2007. Well, it is there, but it's not there that much. It's not always says that there's this problem, but it says there's really worse. Right. Anyway, since the expert letter is, I think, you know, which has to be, unless it's inherently unbelievable, as the assertions have to be taken as true, the court didn't address the letter at all, which is, I think, one big problem with this decision. And certainly didn't find that this expert, the three experts' statements weren't inherently unbelievable, which I don't think they are. But I think other objective evidence from the State Department, the Norwegian organization, and other sources. And so I think what we have to do, what the court has to do, is compare that evidence, 2012-2013, with the record from 2007. And on the 2007 record, this court, in its memorandum of opinions in 2007, said rightly there is no evidence of any violence against homosexuals in Ethiopia on record at that time. So I think it's a really clear comparison. I don't see any support for the court's assertion that, you know, things haven't changed. Even the government has been briefed in, you know, echoing that assertion by the court, says, oh, well, the evidence already showed harassment and discrimination. And that's not what we're talking about now. We're talking about violence. We're talking about police and mobs attacking people. They're suppressing people and then raping them in prison. That's totally different than the United States. One of the questions that occurred to me as I was reading her briefs is, how is that different from cases where people from Mexico argue that the general criminal conditions in Mexico have worsened, but we say in denial and relief, but you haven't particularized it to your situation? I mean, the fact that it may be a dangerous place and crime exists doesn't get you there. Right. So I wanted to invite you to materiality. So thank you. So the court said as materiality, it was very short materiality, but it said, he hasn't shown specific threats to you. Right. Now, that doesn't make any sense because he's been in the U.S. since 1980, and he's only been to Ethiopia once. I think it was in the 90s, the 30 days when his father died. So the notion that he should have to have some homophobic enemy in Ethiopia, that's what it's about. But how is that different from somebody who says, I fear going back to Mexico because I'm helping in America for 20 years and I'm going to be viewed as a rich American, and my family may be subject to threats of kidnapping and so on. Right, so there's two things. One is that those claims, I think, fail in part because those people are seeking to be open to apply for asylum, right, and they would like an access to a protected ground. It's just a very generalized comment. Right. But it's a cath thing, so he doesn't even have to show an access to a protected ground. He has to show some likelihood of torture. Right. So for the new star, he has to show a reasonable possibility that makes it worthwhile to explore whether he can then show that it's 50% more likely that he can torture. Right. But here, even though he doesn't have to show access, the fact that he, that it's understood that he is a gay man, gives all this evidence of torture and violence against people in Ethiopia material to his claim. So I think the notion of the border is that he has to show a specific threat, make a specific sentence, both here and for Canadians. The government, in their answering brief, right, is that he should have to show that family members of people in Ethiopia have had problems or been attacked. But, first, there's no evidence that any of his family members are gay. And second, it's undisputed that he doesn't have any family members in Ethiopia. The immigration judge at AR-555 and his decision in 2007 finds that all his families are here.  There's no family in Ethiopia. So it doesn't make any sense to have to show attacks on his family there. So, if we're seeing that if the facts were different, that if it used to be a family here that were homosexuals, that the application would require a finding that there were specific threats? No, because I don't think, because it's not about his family. I mean, I think the objective evidence shows that there are, you know, LGBT people in Ethiopia are consistently subject to violence by the government and private citizens. Whether he, particularly a gay person in this Ethiopian family, has been among those people who have been attacked, I don't think resolves the question of whether or not it would be considered a claim of balancing the interests of his family, but rather the term of homosexualism. So does that go into the likelihood that he will be harmed? I think it would certainly help, right, him. But I don't think it would be fatal to his family. And it's just not the situation. A family connection wouldn't be irrelevant, you know, just to go off the tussle this way. In all gay cases, if there's family connection, it is relevant because there's an antenna against a particular family because of, let's just call it difficulties or whatever it is, and then it's very relevant. I think this family complaint would only be, well, if they're gay, because there's no evidence for anything, if the family members of gay people are being targeted because they're family members, if the family members aren't gay and they're living there, which is fairly hypothetical, safely, well, then I need to inquire, well, does anybody know they're gay? So the question really is how likely is it that he would be known to be gay when he goes back to Ethiopia? And what happens to people in Ethiopia when it is known that they're gay? I think one point on that is that, you know, he is out and open again here in the States. Under this Court's precedent, he would not be presumed to have to hide that fact to avoid violence in Ethiopia if he goes back. So, you know, what we're looking at is someone who is sort of proudly and openly and out in their society, what would that person be suggested to? And I think the objective evidence from 2012 and 2013 shows that they would be in real danger. Is it proper at all on this kind of a claim for relief for the Board to consider his criminal partner? Well, because the Board already has considered his criminal partner, and that's why he's only eligible for deferral. No, no, I understand that. I guess my question was a little bit more directed to this specific form of relief. Is that relevant at all? I think only as far as, you know, there's not contributions of evidence on this, but I would think that it could be relevant as far as someone with a criminal partner who is considered by kids, although it's well behind them at this point, if that's discovered by Ethiopian authorities, I think it would place them in all the greater danger, I would imagine. A person who is openly gay who also has multiple, you know, public indecency type conditions. Well, you know, one of them was a great big film, The Inheritor. Right, it was for the Luton City's kind of a minor. It was this ad on a bus where he touched another man's forehead on a bus that was high consensual back in 1993. So, I mean, the Ethiopian government knew that, which, you know, and we don't have as much power whether they would or not, but I think that that would only make his deferral claim stronger. I don't think you should ask this question to the government, but in your experience as an immigration lawyer, if somebody is granted deferral from care relief, does the government ever come back years later and say, I think conditions have improved and now it's time for you to go home? You know, in my experience, no. The only times that I and my colleagues have really seen someone be removed when they have got deferral is where the government has made diplomatic assurances to the U.S. government that they cannot be tortured, and then the U.S. government will remove them and identify a certain diplomatic issue between the governments. So I think that's really the only case where we've seen. So he gets to leave the chancellor pretty good. He will remain in the United States. But is he ever able to adjust his status? He still will have a final order of removal, and so he's sort of in this limbo of having to defer to get a removal. Does he ever get a green card to work while he's here? He can work with a work permit that you can get when you have deferral, but you wouldn't be able to adjust to a more solid status. I have two minutes left. I might say for a slight time on jurisdictional issues or about this. Sure. Good morning. May it please the Court, this is Dan Shuler, the Attorney General. In this case, it is not disputed that a conifer was previously found removable because of his conviction for a crime involving moral turpitude. Therefore, the criminal alien jurisdiction bar applies to this case, and it's our position that there's no jurisdiction to refute the court's decision on the motion. We're not moving to the merits. This Court already decided the merits of his hat claim, and there was jurisdiction for that. This is whether he can fall into an exception to the timeliness of his motion. That's a different item. So that's a different question. Your Honor, the question is whether he is able to overcome the untimeliness of his motion. It's solely in the most reopened, changed country conditions context. Oh, well, in our case, only the lieutenant has addressed whether or not the fact that country conditions are sufficient to justify the reopening. But that's a factual finding. Well, that makes it pretty easy to try to exercise in terms of whether or not it's refutable. We're just looking at whether there's enough new evidence. No, Your Honor. But that may be a hard question. It's not consensually very difficult. Well, our position is that under Pachinko, this is a factual dispute, and so the criminality only embarked, at best, as part of jurisdiction. But for that group of sections, yes. Yes. This Court says here, sir, there was no evidence to show that one of the sections were a misdreavant in his own condition. One of the sections ought to be a misdreavant in his own condition. And in that case, that was not a misdreavant. Now we have the reports that we're just discussing, and the reporters are just saying, well, we're going to have to change the conditions. There are actually documents in the records that show some violence against homosexuals. Yes, from the original proceedings. Right. There are documents in the records. The question is, in 2007, 2013, were there changed conditions in Brooklyn? The Board says no. There's substantial, somewhere. Where is the evidence between 2007 and 2013? I'm sorry, perhaps I'm misunderstanding. I'm not sure you told us what evidence existed in the record in 2007, which the Board compared with the new evidence that counsel recited. That's what we're looking for. What was it? There are a number of articles with homely gay men talking about violence with their friends. That was my conjecture. Excuse me. If you're reading from my own reading, could you tell us what that evidence is that was in the record in 2007? I have the record here. It is quite voluminous. Could you? Well, AR 1693, someone stated that he knew two friends who were executed. The country report, while it does not exist that homosexuality was illegal, it did say that it wasn't widely reported in terms of violence. But there are other articles, I believe, that are pretty representative as well. So let me come to our learning. When you should be expecting this question, you should be able to read whatever the relevant excerpt is, also for your argument. I'm sorry, Your Honor. I thought we were going to be discussing jurisdiction, but I am prepared to discuss the merits of the changed country conditions. That's what I'm asking you about. So I'm saying can you read from me, for me, the evidence that is strongest for your position, that in the record of 2007, it was established that there was serious danger of persecution or of torture against homosexuals. Does that stand to build evidence to change things? Dr. Shams. While you're looking at it, I think I'm going to go back to our opinion back in 2011. At the time I ran my hand up and told them, they said they're finding like there is no evidence in the records of any violence directed against homosexuals, excuse me, either inside or outside the prison system. They did say there was evidence illustrating the conduct of mistreatment of political prisoners. I would quote, Now the evidence establishes the required connection between prisoner mistreatment and persecution. Close quote. I would suggest there was no such evidence. That's correct. But if you look through the record, there is evidence that they were discriminated against and that there was some violence against them. That's correct. I'm willing to hear it. This is an interview with someone who met openly in person in August of 2002. Do you know anyone who was victimized by the government? Yes, I know two cases who were executed by the government. How do you compare life from Addis Ababa in South Africa? There are a lot of differences, especially in terms of my sexual life. Being in South Africa, you can explore freely. And his message to his gay friends was that they should come to South Africa effectively. That's on 1693 and 94. There are several other documents that discuss that type of... The country report does not indicate violence. I think that's probably what this court was relying on because that is typically the most... Yes, there were other articles that did indicate that there was some violence against homosexuals in Ethiopia in the original proceedings. It's an article. It's not testimony. It's a State Department report that he made through a contrast to the 2006 report which suggests... He's already declared portions of those two reports. And now there is a shift, basically, in the... Maybe he's tense. Yeah, he's tense. The worst thing is the conditions. That's what I'm saying. This is the 2006 report from the State Department. It suggests, quote, that while society did not identify the extent of homosexuality, there were no reports of violence against homosexuals in Ethiopia. Different than the 2012 State Department report which says there are some reports of violence against lesbian, gay, bisexual, and transgender women in Ethiopia. The report was limited due to their retribution, discrimination, or some immunization proposal. Does that make sense? No, we acknowledge there's some things that changed there. I mean, I was going to say, it seemed like more than a slight change, but I'm trying to assume it's interesting. So, your message is that because of the benefits and aggravated violence, you're referring to health as well, or any other form of immigration relief, we can't wade into this factual dispute and just say, oh, the conditions have, in fact, changed, and the evidence compels the opposite conclusion from every result. Right. Under Pachinko, it's our position under 242 HCC, I pass this Court of Jurisdiction over this factual dispute. And that, to us, is the exception of Pachinko, which was another abuse of discretion for the particularly serious crime. This is akin to that determination because we are actually looking at the merits of the deferral. It's the changed country conditions, factual dispute, and the motion to reopen. But if there is no dispute about the facts, do you agree that there would be jurisdiction? Because it would be based upon an exemption to a stipulated jurisdiction. It's our position that... Do you agree that's the law? Do you agree that if a determination was made that there are less dispute of facts than there are dispute of facts? I believe this is a question of law and facts. Do you agree it's an exception to a stipulated jurisdiction? Do you agree that there are no consequences? I'm referring to the state's story in the whole case, not just that one case. That actually didn't have to do with motion to reopen. I don't think this court was weighed in on the motion to reopen issue. Isn't it an extension of that statement which would apply to the application for time? And what the power of the judge has to do is extend that to time. Our position is extending Ramadan when you have the criminal alien jurisdiction bar would effectively eviscerate that bar. And there's a reason that it exists. He's already had his day in court on the merits. This was time timely. This is a factual dispute. This is why it's reviewed for abuse of discretion. The change of circumstances is an exception. The court can look to those. To go back and reconsider the Canada case, correct? Well, so Ramadan... You said that not in the case. There's a slight change just on the amount of body with change in country conditions in the motion to reopen context. It has to do a little bit more with the individual alien whereas the change of circumstances for the time-timely asylum applications is sort of undisputed. It's a horrible record. It's about making those cases true. So there's a nuance there. There is now. And that's what the judge has to do is to extend some of the further concurrent players on these other cases. It would be much further to bring that into the motion to reopen context. And none of those cases dealt with the criminal alien bar. They dealt with it in different directions from the bar. I'm concerned about the hard work. You say there was no evidence of discrimination in the country that would give rise to the kind of beef between the two. Were we wrong in that point? In coming to the conclusion there was no evidence in the record of changes in custody. I just tried to hear some of the sections. Thank you. I don't want to second-guess the court here. You can't... We can trickle in here. But reading the record, I think there is evidence from the original. He's trying to create some problem for me where there's a refusal to give relief because there's no evidence. Right. And now there is evidence. You can see that. There is evidence that by a chance of change can be used so that the person can receive a right for hard cases. So there's evidence. So, I think in our creation and here today our position is that things were bad in 2007 and they're in 2007 and things continue to be bad. And it's not a substantial change. In the evidence that you have, what was the substantial change based on how many things are out there that were in the evidence since things were worse? Are you challenging the evidence that's in the authorization and the evidence that you have to continue to do that? As I was reading it, it seems to me that people were reporting the instances more. Instances of what? People are reporting and coming forward as opposed to maybe not reporting the violence previously. That's how I read the documents. I see. As well as I read it, there are a few instances where the reports are that this is getting worse. And maybe you learn by reading the same documents. For example, the Cornell professor report, he says that in Saudi Arabia laws are enforced and people are imprisoned. There's something from 2005 and there's something from the International Laws of Being a Gay Society and they are, of course, the 81 to 82, says those laws are enforced. So it just seems like a continuation of the same treatment. But you rely on State Department reports, government reports, on a regular basis, correct? That's correct. And we have two reports that seem to be in the direction of getting the truth, getting some change, and getting some change. So there's a slight change. There is. And it's not going to be a different kind of news report. But it's a new report. And it's a new report. Okay. Any other questions? If not, we just need to get to the questions. Thank you. Thank you very much. Thank you. Thank you. Thank you. Thank you. I think we've said enough things tonight. I don't think we have to continue to do two things. Maybe my colleagues will be interested in a different point. Number one, does the response take a look at the rest of pages of 1693 and 94 in the AAR? And second, could you respond to the computer equipment restriction that was provided? So on the first point, from what I remember, that is an accurate representation of what that page of the record says. I don't think the fact that I don't think one anecdotal account of two acts of violence against two homosexuals in Ethiopia changes the fact that, you know, we're going from now making sort of zero to two consistently subjected to violence by the government in the Middle East. So I don't think that affects the analysis because it has to be from zero to lots from two or a standard to lots so it's really more than an analysis to establish the history of these instances. Do you have the same argument that you're going to make in your previous report? I don't believe so. I mean, in the previous report he would have had to show much more than two attacks to the elephant for a cat anyway and as a score he felt more sure of that the first time around. But he was making the argument or was he not? But our panel rejected it so the rest don't see it. Resoundingly they rejected it. Secondly, resoundingly they still don't. But that's just one of those that he did make the argument. As I said, it didn't carry the argument. I'm assuming he did argue that he was likely to be tortured but he just didn't have the evidence or knowledge to make it up. Well, I don't want to assume it's at all a jurisdiction as I would as well. I just want to make sure we address the jurisdiction we want to. So, on jurisdiction I think two points. Council said that Council and the question point suggest that this is a factual finding about changing circumstances. I think under Ramadan and Garamani this standard that governs the motion to be open would be a mixed question of law reviewable under 12th statute 82D. A mixed question of law and fact that fits within the question of law component of that subsection that restored jurisdiction under the Creel ID Act. But there is a dispute over the facts, is there not? I don't think so. So, in Ramadan, for example, the court held that the question the analogous question of whether there was changed circumstances that would justify an exception to a one year deadline for asylum was a mixed question of law and fact. And I think Garamani is even more on point because it specifically did apply to the motion to be open context unlike what counsel stated. And specifically to the timeliness context, there it was a question of available tolling rather than changed circumstances but it was already extended to this whether some kind of exception to timeliness would apply. And there they found that it was a mixed question of law and fact because motion to be open is based on undisputed facts at least in this case. And what the government is arguing on the substance is that this is not a qualitatively different change. That's a legal standard, whether it's qualitatively different evidence. So whether his undisputed evidence from your argument is that where the board looks at whatever the evidence was in the record in 2007 on country conditions and then looks at the evidence that you offered in support of the motion to reopen to make the determination as to whether there has been a material change that is a mixed question of law and fact. But there's no real dispute over the fact of what the 2017 evidence shows today. It's just a question of whether the evidence has material to his plan and whether there is a qualitative difference between the two undisputed bodies of factual documents. Those are application of those legal standards to those undisputed facts. And that is exactly what the court said is a mixed question of law and fact in
judges: W. Fletcher, Tallman, Huck